May it please the Court, I'm Allison Flint, representing the Conservation Groups, and I will try to reserve five minutes. In this case, the Forest Service decided to reopen a road in a sensitive river canyon and allow vehicles to drive right through the Jarbidge River. By the way, I take it you prefer to be referred to as TWS than Great Old Broads? Whatever Your Honor prefers. The record here shows that that decision to run the road through the river violated federal law, but now in court the agency has raised a series of after-the-fact excuses that ignore its own admissions in the record and controlling precedent. The decision violated the law for several reasons. First, by reopening the road in the floodplain, it violated an executive order that is designed to keep unsustainable development out of floodplains. Before we get too far on this, Ms. Flint, I want to ask you, are you familiar with the case of Native Village v. Kivalina? It was handed down just earlier this year. It sounds vaguely familiar, Your Honor, but I'm not familiar. Okay, I'm very familiar with it because I wrote it. So I am concerned about whether you exhausted your administrative remedies. The essence of that case had to do with whether the group in that case, as a Native tribe, filed the necessary papers to respond to the assessment board's responses, if you will. And we held that they did not. It was like a one- or two-page deal, didn't have anything involved, and basically just didn't respond. And we held they did not comply with the regulations. In this case, you have a lot of attachments, but only one of which that dealt with the issue involved. True, you sent a supplementary letter with additional items, but would you address for me, please, what – it's hard for you to argue this with Kivalina if you're not familiar with that, but it's an important case for you to know. Did you comply with the rules sufficiently to put at issue the matters that you're talking about here? A lot of the stuff you sent was just total fluff, and you've got this little teeny bit that talks about the issues that were actually raised. Is that sufficient under the law? Yes, it is, Your Honor. That – you point to our three-page comment letter on the draft record of decision here, and that letter alone sufficiently raised the issues to put the agency on notice. The standard in this – Is it just to put them on notice, or is it to respond to what they said and to address what they said? I'm not sure I'm understanding Your Honor's question about responding to what the agency said. Yes. Well, the agency hadn't said anything as of that point. Okay, what I'm thinking of here is in 36 CFR Section 215.14, the regulations require that an administrative appeal to contain, in quotes, sufficient project or activity-specific evidence and rationale, including specific changes in the decision the appellate seeks and the rationale for those changes. In this second part, why the appellate believes the responsible official's decision failed to consider the substantive comments. There's a third one, too, in how you believe they violate the law. In what way did the document that you filed in this case comply with that regulation? I see, Your Honor. It fully complied. This Court has instructed that we look to the submission before the agency as a whole, the appeal as a whole, to see if it complied with those requirements and put the agency on notice. And here, between the group's cover letter, the remainder of the attachments, and in particular that letter on the draft record of decision, which that draft record of decision was for all relevant purposes identical to the decision, it complied with each of those requirements. We explained that in detail at pages two to four of our reply brief. I'm happy to go into. No, no, that's okay. If you have nothing. Counsel, in responding on exhaustion, I thought significant Exhibit 6 to the appeal letter, which was a letter of April 13, 2005, and it's in the record at ER 627 to 628. In the second page of that letter, it has a paragraph on each of the points that are your main substantive issues here. So at least for me, I guess I would like you to address whether the language in that April 13, 2005 letter, which was attached to your initial appeal of the record of decision, is adequate to exhaust. Because one paragraph says they're putting the road in a floodplain, and another says that the. Well, it says it's incorporating the earlier comments. And there's a reference also to the adverse impacts of violating in fish. And if you look at that letter, does that respond to Judge Smith's Kivalina case? I believe it does, Your Honor. You haven't looked at Kivalina, though, have you? Sorry. I do believe it complies with the regulatory requirements and the exhaustion requirement in this case. And that's because that letter, as you pointed out, explained how each of the violations at issue before this Court, how the decision itself violated the law. It points out that by causing adverse impacts on the threatened bull trout, the agency has violated the Forest Plan standards. It addresses the executive order and the NEPA issue. And that not only put the agency on notice, but it provided more detail than this Court has required in its exhaustion case. But I guess what I'm troubled by is, as we said in Kivalina, you just can't have conclusory statements. I mean, you've got this big record that has absolutely nothing to do with this, and you've got this little bit that talks about it, and you've got a bunch of conclusory statements that don't specifically respond, at least arguably, to what was done here under the regulation. What's your thoughts on that? Well, I think it's helpful, Your Honor, to back up and remember that we're looking at the submission as a whole. And here the agency never claimed that it was unaware of the legal violations. It just chose not to address substantively anything that was beyond the cover page of the group's appeal. So you're, if I'm understanding correctly, you're saying that what you submitted before is all you really need to do, and when you have a subsequent change, they respond. You don't have to engage the new response. You can simply refer back to the prior response. Is that basically your position? Not exactly, Your Honor. That final letter did address the decision, but I think it's also important to understand the context of the ongoing discussions that were happening here. You said the final letter. Do you mean the letter of July 5th that supplemented the earlier letter? No, Your Honor. I was referring to Exhibit 6, the letter on the draft record of decision. Okay. The issue before this Court is just whether that administrative appeal that was filed by the deadline satisfied the requirement. But if you look at the context of that entire appeal submission, we had raised similar concerns over the course of the appeal, and those prior comment letters didn't address specifically previous iterations. They provided the agency with notice of our concerns about why reopening this road in the floodplain and in the river bottom would violate the law. So is it your position that you can, in effect, in responding to a new – obviously, your group and a lot of other groups in the government go back and forth. You say this is wrong. They respond. You say this is wrong. They respond. And ultimately, you hopefully reach some kind of a resolution in compliance with NEPA, et cetera. But what I'm concerned about here is it seems like what you're advocating – correct me if I'm wrong – is that because you said something before, all you need to do in responding to a new iteration is to incorporate by reference what you've said before using conclusory language, and that's enough. Is that correct? Well, Your Honor, in this case, that was enough, because it complied with the circuit's broad standard of looking to the submission before the agency to see if it raised the issues. And here, if the agency had read and considered the entire submission, those issues would have been clear to it and they would have been familiar to it because we had brought the same concerns to their attention on seven prior occasions. What the agency is, in effect, telling you here is that even if it understood the issues and it has a statement in its appeal decision at page 642 of the excerpts of record that it was aware of the group's concerns but didn't find them compelling. Again, I realize for some people this stuff's incredibly dull, but we're talking procedure here. And the question is, under the rules, under the Administrative Procedure Act and other rules that we have, whether you responded. I would analogize it in maybe a poor analogy to litigation. If you had a series of cases that dealt with the same issue, but you have a new lawsuit and in the lawsuit, instead of filing a response to a counterclaim, filing some kind of an answer, you simply said, you know, we've litigated this before, you know, and see this case, see that case and the other case. Don't ever talk about specifics, but just simply refer to the earlier case. You might have a bit of a problem with the district court. The district court said, well, wait a minute. You haven't answered anything here. You haven't put it at issue. So the question is, under these rules, what specifically is required? How much of a response, a meaningful response, do you have to give in order to have the kind of engagement that the Congress and ultimately the regulations anticipate? What I'm worried about here is that this has become so perfunctory that there really is no meaningful engagement. And that's part of what Kivalina talked a little bit about. So, again, I know you haven't seen Kivalina, but if you can give me any help on why what occurred here is a meaningful response that permits a real engagement, I would be appreciative. Certainly, Your Honor. As an initial matter, I think it's important to remember that this was in the context of ongoing settlement negotiations. There was a lot of correspondence that had gone back and forth, and the constant in this decision, even before the final decision, was always that it would reopen the road in the sensitive river canyon and have adverse impacts to the bull trout and the sensitive resources there. That was very clear to the agency throughout the entire process. And that was clear because of the overall, is that what we look at as the overall engagement or what you have in writing? Well, under the appeal regulations, Your Honor, it is what was in writing. And this Court has looked to the submission before the agency to see if it meets that test of raising the issues with sufficient clarity to put the agency on notice. And here the agency ---- Counsel, I don't want to interrupt your argument, because I think you should answer Judge Smith fully. But we've used almost all of your time so far on exhaustion, which is only one of the four issues. So as soon as you can respond on this exhaustion, this last exhaustion question, I would really like to hear from you on the merits on the three substantive issues. Thank you, Your Honor. To briefly summarize Judge Smith, the agency's position here is, in effect, that even if it understood the issues before it, that it was free to ignore those based on where they're located in the submission before it. And that's just not a reasonable interpretation. If I may move to the floodplain argument here. The agency's decision to run the road through the floodplain violated an executive order that's designed to keep that kind of unsustainable development out of floodplains. And that it violated a central requirement of the order, which is that agencies must stay out of floodplains entirely unless they make an express determination that there's no practicable alternative. And that is particularly important in cases like this one, where this road had been washed out by floods five times in 25 years because it's located in such an unstable floodplain. The agency failed to make that determination, and that's a violation of the order. What the agency is claiming is that its analysis of alternatives in the EIS was sufficient. That's not correct, because NEPA is very different from the executive order. NEPA is informational, and as long as the agency discloses all the impacts, it's free to select whatever alternative it prefers, even if that's the most damaging one for the floodplain. But the order, by contrast, is substantive, and it requires more. The agency must avoid the floodplain entirely unless it makes that express determination. Moreover, if you... From your perspective, looking at ER 182 and 571, it appears that although they didn't make an express determination, they implicitly found the alternatives were not practicable and the only alternative was siting in the floodplain. Is that sufficient or insufficient? It's insufficient, Your Honor. And do you have any case law that would substantiate that? Well, under the plain language of the order, implicit is not enough. Okay. And in addition, if you look at the Forest Service regulations, they require a final decision about no practicable alternatives. Finally, if you look at this Court's precedent in the City of Carmel-by-the-Sea case, that was an instance where the Court upheld an express determination. I'd also like to point out that the EIS and the record of decision here contradict the agency's claim that it made an implicit finding. Neither of those say anything about reopening the road and the floodplain being the only option here. The record of decision has a section on the executive order, but it skips right over that central requirement, and that's not surprising because the EIS shows that the agency did have other options available. Alternatives 5 or 6, 5 and 6 are the hillside alternatives, would have moved the road out of the floodplain. The agency defined these as reasonable options that met the project's purpose, and they were better for the environment. I'd also like to briefly here address the in-fish violation. The decision here also violated the National Forest Management Act because it didn't comply with the in-fish standards of the forest plan. The agency admitted in its EIS that running the road through the river will violate the in-fish standard known as FW2 or the fish standard because it left Was FW2 actually applicable to this project? Yes, it was, Your Honor. The agency's interpretation in the record was that the road is a facility subject to that standard. And that was a reasonable interpretation because this project was defined not only as an access project to deal with the washed-out road, but also a fishery restoration project, and therefore it applied the fishery restoration standard. The agency's claim now in litigation that the fish standard doesn't apply is entirely post hoc, and as a result, the record here shows that the fish standard was violated. I'd like to reserve the remainder of my time. Very good. We'll hear from the government. May it please the Court, I'm Elizabeth Ann Peterson from the United States Department of Justice on behalf of the Forest Service. In this case, the Wilderness Society and others filed a letter indicating that they considered the decision of the agency to be arbitrary and capricious and attached a great deal of material to it, one piece of which dealt with the draft version of the record of decision theoretically being appealed in that letter. That draft record of decision did adopt the same project generally, did not include all of the final material in the record of decision theoretically under appeal. So there really wasn't anything in their submission that directly addressed. Do you believe they complied with Kivalina? I realize Kivalina's new. I apologize, Your Honor, for my failure to have familiarized myself with that case. I do not know. I do believe, however, that the minimal standards here set by the Forest Service regulations are not complied with by a letter that merely identifies, at best, in the 20-something page of an attachment that generally addresses irrelevant materials, issues that they would like to raise on appeal without identifying what the legal issue is that they have with the decision that was entered. In this case, they mention that it shouldn't have been in a floodplain. They mention that it merits further environmental consideration at a time when the draft record of decision had not even made a determination whether a supplemental environmental impact statement would be needed. Later, when the final was issued, the decision had been made. That was not mentioned because it hadn't even occurred yet when the letter was drafted that was attached to this appeal. Those are not ways to bring the agency on notice. Do you believe that the appellants in this case can just put a placeholder in with conclusory language and comply with the regulations? The regulations are quite clear that an appellant cannot do that. They set out very specific. Counsel, why doesn't that April 13 letter that I mentioned that was Exhibit 6, why doesn't that comply? For one reason, Your Honor. It mentions INFISH. It says that the decision does not comply with INFISH. But it doesn't mention the standard that it believes is responsible for its belief that INFISH was not complied with. And in fact, their belief was incorrect. In the record of decision that was published, the INFISH standards that were discussed and that were complied with were those that are relevant to this project. The one that the Wilderness Society believed was violated was not applicable to this project. And that is one of the issues that could have been resolved between the agency and the appellants before the district court needed to get itself involved. Had they raised it, it could have been answered. It was not because they didn't raise it. The purpose of having an administrative appeal requirement prior to judicial review is just for that reason, to allow the agency that is most familiar with its action to resolve any issues that are raised by appellants before the courts get involved. And in this case, the failure clearly made that impossible in a way that was unnecessary and impractical, so that the district court was the first to be presented with their incorrect view that this violated a standard that was not even applicable. Kennedy. Given the government's view, I'd be interested in whether the letter of July 5th, 2005, at ER 10, 637 through, well, 637, I guess, whether that can be considered. That came in later, supposedly supplemented the Exhibit 6 to which Judge Gould made reference. Is that permissible? Does that really help the government and the Wilderness Society to, you know, meet and agree and confer and try to resolve these issues? If those issues had been raised appropriately before the deadline for appeals had passed, it would have been a helpful document. But the regulations require that all of those materials, attachments included, be submitted by the 45-day deadline, and there is a reason for that. The administrative appeal process here is governed by the Appeal Reform Act, which requires the Forest Service to dispose of these appeals 45 days from that deadline. So it cannot be receiving new materials after the deadline for appeals without cutting significantly into its time for consideration. And that's not just the regulation, although it is a regulatory requirement. It is also a statutory requirement. And for that reason ---- Kennedy, which statute do you refer to? The Appeals Reform Act is at 16 U.S.C. 1604 note, I believe. It's only in the note. Right. But because it's a statutory requirement, the Forest Service has no flexibility to simply allow these things to come in. So in other words, if a placeholder is filed that doesn't really assist the parties in engaging in the government to respond, the government has a relatively brief period of time to respond. The parties, if they file something late, then it kind of cuts into the ability of the government to respond within the statutory or certainly the regulatory period to what has been sent. Is that correct? That is correct. And the regulations are clear that all materials relevant to the appeal need to be submitted by the deadline. There is the opportunity to discuss, but attachments that are filed after the deadline are not to be considered. Now, even if the society had not waived its right to judicial review in this case, the decision here should be affirmed in any event. As I mentioned, the NFISH standard that they rest their National Forest Management Act challenge on, it doesn't apply to roads. It applies to facilities such as interpretive facilities, user enhancement facilities as the category. Roads are not in that category. Roads have their own standards. And in the record of decision, the Forest Service listed the ways in which the record of the decision here complies with the applicable standards. That's at the excerpts of record at 564. But did not reference FW-2? FW-2 does not appear in the record of decision at all, Your Honor, because it doesn't apply at all. What about the argument that the government, I mean, that the society makes about the floodplain order? Now, two points on that, Your Honor. First, the society is attempting to enforce that order as though it were the law, and it is not. It's an executive order which is binding on the agency. But the question for judicial review is whether, in light of that binding requirement, the agency's decision was arbitrary and capricious because of the failure to comply. On the exhaustion issue as to that, why wouldn't that argument be sufficiently exhausted by Exhibit 6? Exhibit 6. I mean, it's a simple contention. They're just saying you can't put the road in a floodplain and you're violating the executive order. So, you know, why isn't that sufficient to bring the issue to us? And you might be right on the merits, but why don't we look at the merits? Two reasons, Your Honor. First, the executive order does not prohibit the siting or the repair of projects in floodplains. In this case, no one was siting a new project in a floodplain. It was a question of whether to continue to use a project, a road. But that's a merits argument. Right? That doesn't address whether it's exhausted. It's exhausted if the appellant brings to the attention the nature of its concern and what the at best, if the nature of its concern was that you can't build in a floodplain under the executive order. It's just flat wrong. So it doesn't raise an issue that was discretionary with the Forest Service, that was part of its record of decision. The record of decision instead discusses those alternatives that were not rejected as impracticable because they would have such extreme, both economic and environmental impacts, which are the road options on the upslope. Those were not favored by these plaintiffs or by any other environmental group because they would have so much greater ground disturbing. Let's assume, arguendo, that you did have to comply with the executive order in the way they were talking about. I gather you would agree there was no explicit determination by the agency saying why it was impracticable. On the other hand, you do talk a little bit about, at ER 559, about why you didn't, what you were doing to minimize the impact. Is that sufficient or do you need to have something more expressed? Yes. In general, the compliance with an executive order can be determined to be adequate on the basis of the record as or the discussion as a whole. It needn't address it. What do you cite as authority for that? The case law cited in our brief is from other circuits. Okay. Well, what is it? But even in Carmel v. C, the discussion there is whether there is an APA challenge to compliance with an executive order. Right. Now, an APA challenge by its nature addresses the question whether the decision as a whole complied with the law and not whether it doesn't allow judicial review of the specific requirements of the executive order itself. And so I believe that even this Court's precedent supports our position and not that of the Wilderness Act. So basically, you're kind of taking the position that the society is with respect to the exhaustion waiver. They're saying as long as it's in the mix somewhere and this booyah bays that's been previously transmitted, that's enough. Yes, Your Honor. And you're saying with respect to the executive order, you've got your own booyah bays and as long as it's in the mix, that's enough. Is that a fair statement? The purpose is judicial review. That is correct, Your Honor. Okay. Yes. And it's also worthy of note, I think, that the trail alternative for which the society is the proponent is within the floodplain. So under their argument, that is not an acceptable alternative unless the road is in the floodplain. Where is that? What trail is that? Alternative 2 throughout the record is the reclamation of the existing road as a trail. The existing road is within the floodplain. So basically what they're proposing is no different in terms of its impact on the executive order than what the agency ultimately produced. If their interpretation were correct, which it's not. No. So it's not a very good argument for them, in my opinion. The only remaining issue is the question whether an additional environmental impact statement was required, a supplement to this one, to discuss new impacts. And I think it's very clear that the impacts of this, of the selected alternative were only reduced from the alternatives discussed in the final environmental impact statement. It took out all of the ground-disturbing elements, virtually all of the ground-disturbing elements of the alternatives that it combined. And the environmental impact statement considered impacts from alternatives going from this trail conversion up to the upslope road up to a higher-grade road through the valley floor. So there's no question that these impacts are within the range of impacts that have already been considered or that the modifications that were made to the proposed alternatives in the selected alternative were minor modifications. All they did was to, over this one mile. So from your perspective, there's no NEPA problem. There is no NEPA problem. There is no National Forest Management Act problem. And compliance with the executive order is, to the extent that it's reviewable, was substantially adequate here in any event. And we, therefore, believe that this Court should affirm the district court. Okay. Any questions by my colleague? Thank you. Thank you for your argument. We'll hear rebuttal from Ms. Flint. Thank you, Your Honor. First of all, I'd just like to clarify that Attachment 6 to our administrative appeal on the draft record of decision did address the actual decision here. Opposing counsel doesn't identify any changes between the draft record of decision and the final decision here. And there were none that are relevant to the issues before this Court. As for Your Honor's decision in the Kivalina case, we would like the opportunity to submit a supplemental brief on that case. Forgive me for being unfamiliar with it, if that would assist the Court in its review. Unless my colleagues disagree, yeah, I think that would be very helpful. Let's say five pages max on this. I think it would be helpful. Yeah. Five pages, both sides, simultaneous submission. So let's say within, what, 15 days of today? Does that work for my colleagues? So if you'll do that to submit simultaneously regarding the impact of Kivalina, we'd appreciate it. Certainly, Your Honor. I'd also like to just point out here that there isn't a dispute in this case that the Forest Service was aware of our concerns and the legal violations we had brought up. So, I mean, this really does boil down to the Forest Service's interpretation that it can ignore the legal issues that are before it based solely on where they're located in the submission before the agency. And that's not reasonable under this Court's exhaustion case law, and it's not reasonable under the agency's own appeal regulations, which contemplate use of attachments. With respect to the in-fish violation, I'd also like to point out, as Your Honor, recognize that the record of decision here doesn't address the fish standard violation at all. And that's arbitrary and capricious, because in this circuit, the agency has an affirmative obligation to show how its decisions comply with forest standards. But isn't it correct that FW-2 doesn't apply to roads? No, Your Honor. In this instance, the agency reasonably interpreted the road as a facility that was subject to that standard. And that's because, again, it defined this project not only as an access project to deal with the road, but also as a fishery restoration project. I mean, in fact, if you look at that dual purpose, this didn't require a road at all. And so, in that instance, if the agency had chosen the trail option, which also would have satisfied the project's purpose. But maybe not the executive order. Well, Your Honor, it's true that under the trail alternative, if we switched to the executive order, the agency would have had to grapple with its lack of a no practicable alternative. But in effect, you were proposing an alternative that violated the executive order as you construed. Your Honor, we weren't – our clear preference was always that trail alternative, because we recognized that it would be the most protective of the resources at issue here. But we recognized that if the Forest Service was going to choose to locate a road in the canyon, it had to look at the next best options for those resources. And the record shows that was the hillside alternatives. Okay. Thank you. Thank you very much for your argument. Both parties well argued. And the case just argued is submitted. And the Court stands in recess for the day. All rise.
judges: Sack, Gould, Smith